IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | |
|---|---|
| ROSA PINEDA | : |
|     Plaintiff | : |
| v. | :    No. RWT 04 CV 2647 |
| MEDICAL SERVICES OF CHATTANOOGA, INC. d/b/a MEDICAL SERVICES | : |
|     Defendant | : |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT**

Defendant Medical Services of Chattanooga, Inc. d/b/a Medical Services ("Medical Services") hereby files this memorandum in support of its Motion to Dismiss for Failure to State a Claim, or Alternatively, for Summary Judgment.

Statement of the Case

This action was initiated for the alleged violations of the Fair Debt Collection Practices Act ("the Act"), 15 U.S.C. § 1692, et seq. The Complaint filed by Plaintiff Rosa Pineda alleges that Medical Services is a "debt collector" and has violated the Act.

This case is before the Court upon Defendant's Motion to Dismiss for Failure to State a Claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or alternatively, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Medical Services will show that it is not a "debt collector" within the meaning of the Act, and therefore there is no cause of action against Medical Services. This memorandum is submitted in support of Defendant's motion to dismiss for failure to

state a claim, along with the Health Care Billing Agreement between the defendant and Shady Grove Adventist Hospital, the Statement of Account sent to the Plaintiff by the Defendant, and the standard Financial Agreement of Shady Grove Adventist Hospital given to all its patients, attached to the motion

## Statement of the Facts

On July 2, 2001, Medical Services entered into a Health Care Billing Agreement with Adventist Healthcare (Exhibit 1 to the Motion to Dismiss). In the agreement, Medical Services agreed to act as a servicer for Adventist Healthcare by processing claims and directing billing payment plans. Pursuant to the Health Care Billing Agreement, Medical Services deals solely with claims processing, billing, payment plans, and outstanding accounts. At no point in the Health Care Billing Agreement entered into by Medical Services and Adventist Healthcare does Medical Services refer to itself as a "debt collector."

Plaintiff received treatment at Shady Grove Adventist Hospital on March 3, 2003. Plaintiff's account was sent to Medical Services' "Early Out Extended Patient Business Office Program" on May 1, 2003. At which point, Medical Services sent Plaintiff a letter with the names of Medical Services and Shady Grove Adventist Hospital clearly identified. In that letter, Medical Services thanked Plaintiff for utilizing the services of the hospital, asked Plaintiff to contact Medical Services to discuss her account, and inquired as to whether Plaintiff would need assistance, charitable aid, etc.

On August 20, 2003, a "Statement of Account" (Exhibit 2 to Motion to Dismiss) was sent to the Plaintiff reminding her of the status of her account. At that time, Plaintiff

was advised of her payment amount due, the due date of August 15, 2003, and that her payment was past due by five days.

Medical Services closed Plaintiff's account in September of 2003 at which point Shady Grove Adventist Hospital sent Plaintiff's account to a collection agency, as per its practice.

The specific allegations of the Complaint, which set forth actions or purported actions by the Plaintiff, are the following:[1]

> 14. Plaintiff incurred a debt for personal, family or household purposes with Shady Grove Adventist Hospital, located at 9901 Medical Center Drive, Rockville, Maryland 20850, for medical services.
>
> 15. Defendant, trading as Medical Services, communicated with plaintiff in connection with her past due Shady Grove Adventist Hospital Bill.
>
> 16. Defendant, trading as Medical Services, regularly collects debts owed to others and is a "debt collector" under 15 U.S.C. § 1692a(6).
>
> 17. Defendant, trading as Medical Services, violated § 1692g by failing to provide information to the plaintiff in its initial communication or within five (5) days after its initial communication disclosing that plaintiff had thirty (30) days to dispute the validity of the debt under 15 U.S.C. § 1692(a)(3) and that the plaintiff had the right to request verification of the debt, as required under 15 U.S.C. § 1692(a)(4).
>
> 18. Defendant, trading as Medical Services, in violation of 15 U.S.C. § 1692e(11), failed to disclose in its collection letters to plaintiff that the communication was from a debt collector.
>
> 19. As a result of defendant's violation of the above provisions of the Act, plaintiff has sustained statutory and actual damages, as well as incurred attorney's fees and litigations costs.

---

[1] By referring to these paragraphs, the Defendant does not admit that such allegations are correct. In fact, many are not, as shown by the supporting affidavit.

3

<u>Argument</u>

I. <u>This Motion Should be Treated as a Rule 56 Motion for Summary Judgment</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure provide that "if . . . matters outside the pleadings are presented and not excluded by the court, the motion [to dismiss] shall be treated as one for summary judgment and disposed of as provided in Rule 56." See also <u>Gay v. Wall</u>, 761 F.2d 175, 177-78 (4th Cir. 1985).

Medical Services will be relying upon the Health Care Billing Agreement between itself and Shady Grove Adventist Hospital (Exhibit 1 to the Motion to Dismiss), the Statement of Account sent to the Plaintiff by Medical Services (Exhibit 2 to the Motion to Dismiss), the standard Financial Agreement of Shady Grove Adventist Hospital given to all its patients (Exhibit 3 to the Motion to Dismiss), and the affidavit of Dallas Bunton in support of this motion. Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Motion to Dismiss for Failure to State a Claim should be treated as a Rule 56 Motion for Summary Judgment.

Medical Services asserts that there are no genuine issues of material fact regarding Medical Services' liability for this claim, and Medical Services is entitled to judgment as a matter of law.

II. <u>Medical Services is Not a "Debt Collector" under the Fair Debt Collection Practices Act.</u>

Plaintiff filed her Complaint on August 13, 2004. Plaintiff asserts claims against Medical Services for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. Plaintiff has mistakenly categorized Medical Services as a "debt collector" under the Fair Debt Collection Practices Act. As explained herein, this

4

mistake constitutes a failure to state a claim upon which relief may be granted. Alternatively, Defendant is entitled to summary judgment.

Medical Services is not a "debt collector" as defined under 15 U.S.C. § 1692a(6). Medical Services is responsible for servicing the accounts of Adventist Healthcare. At no point in the Health Care Billing Agreement (hereinafter "Agreement") between Medical Services and Adventist Healthcare is Medical Services referred to as a "debt collector." The Agreement provides as following concerning Medical Services' responsibilities:

> **Claims Processing**. Client hereby engages MEDICAL SERVICES, INC. to review, audit and take the necessary steps to file, re-file and communicate with the insurance carrier, and hospital staff to settle outstanding balances placed either as original placement, or an on going service.
>
> **Billing Services**. Client hereby engages MEDICAL SERVICES, INC. to direct bill patients for services rendered by Client.

(Exhibit 1, p.1).

The Plaintiff's account was not in "default." She received a "Statement of Account" (Exhibit 2) on August 20, 2004, which was five days after the payment due date for her account. Consequently, this case now turns on the definition of "default" for the purposes of the Fair Debt Collection Practices Act. The Plaintiff's debt was not in default when Medical Services sent the Statement of Account, and consequently, Medical Services cannot be a debt collector under the Act.

For the purposes of the Act, a "debt collector" is one who:

> uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). The Act, however, provides numerous exceptions to this definition. The pertinent exception is this case limits the type of debt by stating that the term "debt collector" does not include:

> any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt *which was not in default at the time it was obtained by such person.*

15 U.S.C. § 1692a(6)(F) (emphasis added). Therefore, under 15 U.S.C. § 1692a(6)(F)(iii), the classification of debt collector depends upon the status of the debt, and not the type of collection practices employed. See Alibrandi v. Financial Outsourcing Services, Inc., 333 F.3d 82, 86 (2nd Cir. 2003).

The Act, however, does not define the term "default." In applying the Act, courts have repeatedly distinguished between debts that are in "default" and debts that are merely "outstanding," emphasizing that only after some period does an outstanding debt go into default. Alibrandi, 333 F.3d at 86; see also Skerry v. Mass. Higher Educ. Assistance Corp., 73 F. Supp.2d 47, 51 (D. Mass. 1999); Jones v. InTuition, Inc., 12 F. Supp.2d 775,779 (W.D. Tenn. 1998) ("Prior to the default period, the unpaid loan installment is considered delinquent.").

In cases involving student loan collections under the Act, courts have consistently utilized a Federal Family Educational Loan Program definition of "default," in which a debt goes into default only after 180 days, pursuant to 36 C.F.R. § 682.200(b) (1998). Alibrandi, 333 F.3d at 87 (citing Skerry v. Mass. Higher Educ. Assistance Corp., 73 F. Supp.2d 47, 51 (D. Mass. 1999); Pelfry v. Educ. Credit Mgmt. Corp., 71 F. Supp.2d 1161, 1180 (N.D. Ala. 1999); Games v. Cavazos, 737 F. Supp. 1368, 1391 (D. Del. 1990)). Similarly, other federal statutes have defined default as commencing anywhere

between thirty and 270 days after a debt becomes due. See, e.g., 7 C.F.R. § 762.141(a) (1999) (30 days for farm loans); 12 C.F.R. § 336.3(c) (1999) (90 days for loans by federal insured depository institutions to Federal Deposit Insurance Corporation employees); 34 C.F.R. § 685.102(b) (1999) (270 days for certain student loans). While these decisions and statutes reflect varying periods of time preceding default, all agree that default does not occur until well after a debt becomes outstanding. See Alibrandi, 333 F.3d at 87.

In Alibrandi, the debtor, Alibrandi, sued Financial Outsourcing, an entity working for First Union National Bank in managing and servicing its accounts, alleging violations of the Fair Debt Collection Practices Act and sought damages on behalf of himself and a purported class. Alibrandi, 333 F.3d at 84. Alibrandi had failed to make payments on a loan to First Union as of October 1999 and as of January 2000 had neither disputed nor paid the debt. Alibrandi, however, asserted that a letter from Financial Outsourcing in January 2000 did not contain the warnings required of a debt collector's correspondence by the Act. Id. Financial Outsourcing, in response, maintained that it was not a "debt collector" under the Act as it had agreed in its contract with First Union that it was not one, and had also agreed that debts such as Alibrandi's would not be considered "delinquent," much less in default. Id.

The Second Circuit in Alibrandi held that the case turned on the definition of "default" for the purposes of the Act. As the term, however, is not defined by the Act, the court held that the Act's broad, pro-debtor policy would be disserved if the court adopted a definition of "default" that had it occurring immediately after payment became due. Alibrandi, 333 F.3d at 87. Consequently, the court held that Financial Outsourcing was not a "debt collector" under the Act. Indeed, such a definition would immediately

7

expose the debtor to the sort of adverse measures from which the Act intended to afford debtors a measure of protection. Id.

Similarly, in the present case, Medical Services is not a debt collector as Plaintiff's account was merely outstanding and not in default when Plaintiff's account was transferred to Medical Services. The Statement of Account sent by Medical Services on August 20, 2004, reflected the fact that Plaintiff's payment was due on August 15, 2004, only five days prior. In addition, the Agreement between Medical Services and Adventist Healthcare clearly delineates that Medical Services is only responsible for reviewing, auditing, filing or re-filing, communicating, and settling *"outstanding balances."* (See Exhibit 1 to the Motion to Dismiss, p. 1) (emphasis added). The courts have consistently distinguished between debts that are outstanding and those that are in default. See Alibrandi, 333 F.3d at 87. This emphasis placed on the fact that only after a period of time does an outstanding debt go into default bolsters the contention that Plaintiff's account, only five days past due, was not in default but merely outstanding.

In Hartman v. Meridian Fin. Serv., 191 F. Supp. 2d 1031 (W.D. Wis. 2002), the Court emphasized the importance of looking at the contract between the plaintiff and his or her creditor in order to determine when default occurs. Hartman, 191 F. Supp.2d at 1044. The Second Circuit agrees with this approach and held that "the interests of debtors, creditors, collectors, and debt service providers will be best served by affording creditors and debtors considerable leeway contractually to define their own periods of default, according to their respective circumstances and business interests." Alibrandi, 333 F.3d at 87.

In doing so, it is clear that Plaintiff's account was not in default *at the time* it was transferred to Medical Services. The Act specifically provides that the term "debt collector" does not apply in situations in which a debt is not in default at the time the debt was obtained by such person. See 15 U.S.C. § 1692a(6)(F).

In the instant case, Plaintiff entered into a Financial Agreement with Shady Grove Adventist Hospital on March 3, 2003, when she received treatment. The Hospital's standard agreement states that "the portions of any bills for which I (the patient) am responsible are due at the time services are provided or appropriate payment arrangements are to be made." (See Exhibit 3 to the Motion to Dismiss). Other "appropriate payment arrangements" were, in fact, made with Medical Services. Plaintiff's account was sent to Medical Services' "Early Out Extended Patient Business Office Program" on May 1, 2003. At which point, Medical Services sent Plaintiff a letter with the names of Medical Services and Shady Grove Adventist Hospital clearly identified. In that letter Medical Services thanked Plaintiff for utilizing the services of the hospital, asked Plaintiff to contact Medical Services to discuss her account, inquired as to whether Plaintiff would need assistance, charitable aid, etc. Therefore, clearly, Plaintiff's account was not in default at the time it was obtained by Medical Services.

### Conclusion

The issue raised in Medical Service's Motion to Dismiss for Failure to State a Claim is purely a question of law: Is Medical Services a "debt collector" as defined by the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a(6)? Based on federal case and statutory law, the allegations of the Plaintiff's Complaint, and the provisions of the Medical Services Agreement, Statement of Account, and Standard Billing Agreement of

Shady Grove Adventist Hospital, there is no genuine issue of material fact to contradict the legal determination that Medical Services is not a debt collector and consequently has not violated the Fair Debt Collection Practices Act. Based on the foregoing, Medical Services respectfully requests that this Court grant its Motion for Summary Judgment.

Respectfully submitted,

Anthony P. Ashton (Federal Bar # 25220)
Piper Rudnick LLP
6225 Smith Avenue
Baltimore, Maryland 21209
(410) 580-4106

Of Counsel:

J. Scott McDearman
Grant, Konvalinka & Harrison, P.C.
633 Chestnut Street, Suite 900
Chattanooga, Tennessee 37450-0900
(423) 756-8400