IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND
(Southern Division)

| | |
|---|---|
| ROSA PINEDA | : |
| Plaintiff | : |
| v. | : Case Number RWT-04-CV2647 |
| MEDICAL SERVICES OF CHATTANOOGA, INC., d/b/a MEDICAL SERVICES | : : : |
| Defendant | : |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
(1) PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM, OR ALTERNATIVELY, FOR SUMMARY
JUDGMENT AND (2) PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY
JUDGMENT ON ISSUE OF DEFENDANT'S STATUS AS A "DEBT COLLECTOR"
UNDER THE FAIR DEBT COLLECTION PRACTICES ACT

Rosa Pineda, plaintiff, by her attorney Benjamin A. Klopman, submits this memorandum in support of her opposition to defendant's motion to dismiss for failure to state a claim, or alternatively, for summary judgment, as well as in support of her cross-motion for partial summary judgment on the issue of defendant's status as a "debt collector" under the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq.* (hereinafter sometimes the "Act") and states as follows.

STATEMENT OF FACTS

On March 19, 2003, plaintiff was treated at Shady Grove Adventist Hospital (hereinafter "hospital") in Rockville,

Maryland.[1]  A copy of the assignment of benefits/consent issued to the plaintiff by the hospital in connection with the above treatment is attached hereto as plaintiff's exhibit 1.  The assignment, which was signed by plaintiff, states that the hospital's bill was "due at the time the services are provided . . . . "  The assignment goes on to further state that:  "Any charges <u>outstanding</u> must be paid by me [plaintiff] within 30 days of service. . . .", i.e., April 18, 2003.  (Emphasis supplied.)

Following the treatment on March 19, 2003, the hospital sent to plaintiff a uniform statement summary dated April 3, 2003[2] and a statement of account dated April 23, 2003.  A copy of the hospital's April 23, 2003 statement of account is attached hereto as plaintiff's exhibit 2 and indicates that the hospital's bill as of that date had not been paid and that payment was "due by May 8, 2003."

Because the hospital's bill remained unpaid after May 8, 2003, plaintiff subsequently received a collection notice from defendant dated July 3, 2003, a copy of which is attached hereto as plaintiff's exhibit 3, which states the following, in part:

> "As of this date, your account has not been reasonably settled. . . . . You have twenty (20) days

---

[1]  Defendant incorrectly states in its supporting memorandum and affidavit that plaintiff received the subject treatment on March 3, 2003.
[2]  For the sake of completeness, a copy of the hospital's uniform statement summary dated April 3, 2003 is also attached hereto as plaintiff's exhibit 1A.

2

>from this notice [July 3, 2003] to pay your account or
>make appropriate payment arrangements."

Hence, under the defendant's first collection letter, plaintiff had until July 23, 2003 to pay her account with the hospital.

Finally, defendant sent a second collection notice dated August 20, 2003, a copy of which is attached as plaintiff's exhibit 4, which stated a new due date of August 15, 2003 and provided as follows:

>"Your previous <u>PAST DUE</u> statement[3] was to remind
>you of the status of your account, expecting you to
>bring your account up to date. . . ."

None of the warnings or information required by the Act were included in either of the collection letters sent by the defendant to the plaintiff.

Plaintiff's affidavit, which verifies receipt of the above hospital statements and defendant's collection letters is submitted with this memorandum. As reflected in the affidavit, plaintiff does not recall receiving any additional collection notice or correspondence from the defendant other than those dated July 3 and August 20, 2003.[4] This is contrary to the affidavit of Dallas Bunton submitted with defendant's motion, which refers to a May, 2003 letter to plaintiff from defendant,

---

[3] Presumably, defendant's July 3, 2003 collection letter is the "PAST DUE statement" referred to in defendant's August 20, 2003 collection letter.

[4] Defendant's collection letter ("Past Due Statement") dated July 3, 2003 fails to mention or even refer to any earlier correspondence that it sent to plaintiff. In contrast, defendant's August 20 collection letter specifically refers to the earlier July 3 letter.

3

but no copy of which is attached to the defendant's supporting papers.

Nevertheless, submitted with defendant's motion as defendant's exhibit 1 is a copy of an agreement between defendant and the hospital. Interestingly, the responsibilities of defendant are listed as "Claims Processing" and "Billing Services." Specifically, under "Billing Services," the agreement states:

"MEDICAL SERVICES, INC.'s Responsibilities:

**B.     Billing Services**.  Client hereby engages MEDICAL SERVICES, INC. to direct bill patients for services rendered by Client.  This will include three statement/letters, and monthly statements where payment plans are set up."

Later, in paragraph number 2 under the agreement, the hospital's responsibilities are stated to be as follows:

**2.     Client's Responsibilities**.

   **A.** "Client [hospital] will provide all available patient/guarantor information to allow MEDICAL SERVICES, INC. to audit, and attempt **collection** on all balances forwarded to MEDICAL SERVICES, INC."
   (Emphasis supplied.)

For its collection services, the hospital agreed, in paragraph 3B of the agreement, to pay defendant a fee of ten percent (10%) on the "collected amounts" for the initial placement of accounts and that, thereafter, the charge would be reduced to 8.5% on all recoveries if there was an ongoing relationship between the hospital and defendant.

4

DISCUSSION OF THE LAW

<u>Defendant was a "Debt Collector" under the Fair Debt Collection Practices Act Because Plaintiff's Account was in Default</u>.

The Federal Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.*, was enacted to protect debtors from abusive and oppressive debt collection practices and to provide debtors with certain warnings and the means of disputing debts before litigation is filed.  The Act, specifically defines a "debt collector" as:

> "one who uses any instrumentality of interstate commerce or the mails in any business, the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another, . . ."  15 U.S.C. §1692a(6)

The definition under the Act, includes exceptions however, and states that the term "debt collector" does not include any person collecting or attempting to collect any debt ". . . which was not in default at the time it was obtained by such person. . ."  15 U.S.C. §1692a(6)F(iii).

The plaintiff's and defendant's exhibits show that defendant was acting as a third party attempting to collect plaintiff's debt to the hospital for services rendered to plaintiff on March 19, 2003.  The issue that arises, however, is whether plaintiff's debt to the hospital was "in default."  If so, there is no question that the defendant occupied the status

5

of "debt collector"[5] under the Act. As explained below, the undisputed facts set forth in plaintiff's exhibits show that plaintiff's account was actually "in default" as of April 19, 2003 and well before July and August, 2003, when defendant sent its collection letters to plaintiff.

While the Act does not define when a debt is "in default" and the defendant has only cited one Second Circuit decision[6] that discusses the subject, there is Maryland case law that does define the term "default," as well as State of Maryland regulations on hospitals' billing practices that pertain to the subject.

In Nylen v. Geeraert, 246 Md. 4, 10, 226 A.2d. 878, 880-881 (1967), the Maryland Court of Appeals stated that "default" like "negligence" is a relative term that means "neither more nor less than not doing what is reasonable under the circumstances -- not doing something one ought to do;" and, when used "with reference to an indebtedness means simply non-payment."

---

[5] The manner in which the defendant/debt collector and its hospital/client characterize the defendant's status and/or services under the Agreement is irrelevant to the resolution by this Court of the issue of whether or not defendant is a "debt collector" based on the operative facts and exhibits. Otherwise, a third party debt collector could contract away liability under the Act merely by mischaracterizing the status of the debts referred for collection, a result at odds with the purpose of this remedial legislation.

[6] See Alibrandi v. Financial Outsourcing Services, Inc., 333 F.3d 82 (2nd Cir. 2003), which is discussed at length below.

Similarly, the definition of "default" in Black's Law Dictionary (7th ed.) is "the omission or failure to perform a legal or contractual duty; esp., <u>the failure to pay a debt when due</u>." (Emphasis supplied.)  The above dictionary definition was expressly adopted by the Maryland Court of Special Appeals in <u>Head v. Head</u>, 66 Md. App. 505, 655, 661 A.2d 868, 871 (1986).

The Court should also take note that the State of Maryland has enacted regulations that pertain to hospital billing practices and they can be found at COMAR §10.37.10.26 B(4), a copy of which is attached as plaintiff's exhibit 5. Specifically, the above regulation provides that a hospital shall state in its bill that the bill is due "within sixty (60) days of discharge or dismissal," as well as inform the patient of the availability of certain discounts for early payments and imposition of interest or late fees for payments made after 60 days of the date of service.

Applying the above to the instant case leads to the inescapable conclusion that the hospital's bill in question was in default as of April 19, 2003, which is obviously well before the defendant sent out its collection letters to plaintiff.  The assignment between plaintiff and the hospital dated March 19, 2003 (plaintiff's exhibit 1) obligated the plaintiff to pay the hospital for services rendered on March 19, 2003 within thirty (30) days of said date of service, i.e., April 18, 2003.  Hence,

7

when payment was not made by April 18, 2003, the bill was in default.  The hospital's statement of account dated April 23, 2003 (plaintiff's exhibit 2) further stated the new due date of May 8, 2003 for the hospital's bill.  It was only after the hospital's statement of April 23, 2003 did not result in payment of plaintiff's account by May 8, 2003 that plaintiff's account was sent on to defendant for collection.  As of July and August, 2003, when defendant sent out collection notices (plaintiff's exhibits 3[7] and 4), there had been a failure to pay the hospital bill when it had come due according to the hospital and, hence, the bill was "in default."  If the debt had not been in default, it is irrational to infer that the hospital would transfer the billing responsibility for a current account to the defendant in exchange for a 10% contingency fee.

The above analysis is true even if the Court were to find that the sixty (60) day period set forth in COMAR §10.37.10.26 B(4) is applicable.  If so, plaintiff's debt with the hospital was in default as of May 18, 2003, which was sixty (60) days from the date of service.

The default is confirmed by the defendant's collection letters of July 3, 2003 and August 20, 2003, in which the

---

[7]   The July 3 letter was defendant's initial communication with the plaintiff.  <u>See</u> Affidavit of Rosa Pineda.  A demand for payment within 20 days by a debt collector violates 15 U.S.C. §1692g by overshadowing the debtor's right to dispute the debt.  <u>See</u> <u>Swanson v. Southern Oregon Credit Service</u>, 869 F.2d 1222 (9th Cir. 1988)(letter advising debtor to pay account in 10 days overshadows 30 day dispute provision).

8

defendant states that plaintiff's account had "not been reasonably settled" and was "PAST DUE."

Defendant principally relies in its motion on the case of <u>Alibrandi v. Financial Outsourcing Services, Inc</u>., 333 F.3d 82 (2nd Cir. 2003), in which the United States Court of Appeals for the Second Circuit reversed the trial court's granting of summary judgment to a defendant collector and remanded the case back to the trial court to determine whether or not there had been a "default" in connection with the underlying debt. In so deciding, the Second Circuit felt that the record had not been developed on the issue of the status of the debt and that summary judgment, therefore, was not appropriate.

In the instant case, of course, there has been no discovery to date. At a minimum, plaintiff should be given the opportunity to take discovery of the correspondence and communications between the hospital and the defendant regarding the plaintiff's account. For the same reasons as in <u>Alibrandi</u>, this Court could reasonably conclude that the record is not presently sufficient for the Court to grant summary judgment to defendant on the issue of whether the debt was in default.

However, in footnote 5 in <u>Alibrandi</u>, the Second Court stated that it should be up to the debtors, creditors and collectors to define periods of default as they did in the pertinent documents in the instant case. 333 F.3d 87. In the

9

assignment (plaintiff's exhibit 1), the hospital and plaintiff agreed that plaintiff had thirty (30) days to pay for the hospital's services rendered on March 19, 2003 and, therefore, as of April 19, 2003, the debt was in default. Furthermore, when payment was not made by the second due date of May 8, 2003 set forth on the hospital's statement of account, there was a "default" triggering the application of the Fair Debt Collection Practice Act. When the twenty (20) day period established by defendant in its July 3, 2003 collection letter (plaintiff's exhibit 3) expired without payment, there was a further default. And, certainly, after the August 15, 2003 due date also established by defendant in its second collection notice (plaintiff's exhibit 4) passed without payment, there was a another default triggering the application of the Act. Hence, under the <u>Alibrandi</u> decision, the Court should find a default based on the writings of the hospital and the defendant and hold that defendant was a "debt collector" under the Act.

In summary, defendant, as a matter of law, occupied the status as a "debt collector" under the Act when it attempted to collect the hospital's past due bill to plaintiff, which was in default.

CONCLUSION

For the reasons stated above and to be offered at the hearing on the defendant's motion and plaintiff's cross-motion,

the Court should deny defendant's motion to dismiss for failure to state a claim, or alternatively, for summary judgment and grant plaintiff's cross-motion for partial summary judgment on the issue of defendant's status as a "debt collector" under the Fair Debt Collection Practices Act.

BENJAMIN A. KLOPMAN, CHARTERED


By: _____/s/_____
    Benjamin A. Klopman, #01555

216 North Adams Street
Rockville, Maryland  20850
301-424-0677

Attorney for Plaintiff
 Rosa Pineda


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of October, 2004, a copy of the foregoing was mailed, postage pre-paid, to:

> Anthony P. Ashton, Esquire
> Piper Rudnick
> 6225 Smith Avenue
> Baltimore, Maryland  21209-3600
>
> James Scott McDearman, Esquire
> Grant, Konvalinka and
>  Harrison, P.C.
> 633 Chestnut Street, Suite 900
> Chattanooga, Tennessee  37450-0900

_____/s/_____
Benjamin A. Klopman, #01555